UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACOB SALDANA, | § § | |
| Plaintiff, | § § | Cv. No. SA:13-CV-00033-DAE |
| vs. | § § | |
| ZUBHA FOODS, LLC, | § § | |
| Defendant. | § § | |

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Before the Court is the Motion for Default Judgment filed by Plaintiff Jacob Saldana.  (Doc. # 8.)  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.

BACKGROUND

Because Defendant has failed to appear in this matter, the Court accepts as true the allegations in the Complaint and the contents of the supporting affidavits.  See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

Defendant Zubha Foods, LLC, operates Carl's Jr. restaurants in Texas.  (Compl. ¶ 5.)  Beginning in September of 2012, Plaintiff worked full-time as a shift manager at a Carl's Jr. restaurant operated by Defendant.  (Id. ¶ 6.)  In October of 2012, Plaintiff complained to his general manager that sixteen hours

1

were missing from his paycheck.  (Id.)  The general manager told Plaintiff that they had found the mistake and that he would be paid.  (Id.)  However, when Plaintiff received his next paycheck, he was missing not only the sixteen hours but also an additional forty.  (Id.)  Plaintiff complained again.  (Id.)  Three other shift managers were also missing hours.  (Id.)

On Wednesday, November 13, 2012, Operations Manager Nate Attaie came to San Antonio and had a meeting with Plaintiff and three other shift managers who had not been paid for hours worked.  (Id. ¶ 7.)  They discussed the missing pay and the hours worked, and the Operations Manager contended that the employees had not worked the hours claimed.  (Id.)  Plaintiff told the Operations Manager the company was violating labor laws by not paying the employees what they were owed when it was owed.  (Id.)  The Operations Manager stated that Plaintiff would lose if he took this problem to a judge because the company would pay the employees what they were owed prior to the case getting to court.  (Id.)  Plaintiff asked why the employees should believe the Operations Manager, as their pay was already seventeen days late.  The parties finally reached an agreement about how much each employee was owed.  At the end of the meeting, the Operations Manager advised Plaintiff: "By the way, don't be threatening me with this labor law B.S."  (Id.)  Plaintiff responded that he was not threatening and that he would in fact make a claim with the Department of Labor.  (Id.)

On November 15, 2012, Plaintiff went in to pick up his check, and it was still missing sixteen hours.  Plaintiff talked to his General Manager, who told Plaintiff that "the schedule had changed" and that he (the General Manager) would call Plaintiff when they needed him for the next shift.  (Id. ¶ 8.)  Plaintiff asked, "What are you saying?  Am I fired?"  The General Manager responded, "I'm telling you this as a friend, not your GM: You need to look for another job."  (Id.)  Plaintiff continued to inquire about his status and asked to be reinstated, but it was to no avail.  (Id.)

On January 11, 2013, Plaintiff filed the above-captioned lawsuit, bringing a claim against Defendant Zubha Foods, LLC, for retaliatory discharge in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). (Doc. # 1.)  Summons was issued on January 14, 2013.  (Doc. # 3.)  Defendant was served with process through its registered agent and President, Amin Dhanani, on January 25, 2013, via certified mail sent by process server Mike McEwen. (Doc. # 5.)  Defendant's answer was due on or about February 15, 2013.  However, Defendant did not respond or appear.

On March 21, 2013, Plaintiff requested that the Clerk of Court enter a Default.  (Doc. # 6.)  The Clerk did so on March 21, 2013.  (Doc. # 7.)  On April 3, 2013, Plaintiff's counsel sent Defendant a letter advising that a Default had been entered by the Clerk and requesting that Defendant answer the lawsuit within

seven days.  (Doc. # 8 Ex. 1.)  Plaintiff's counsel received a return receipt "green card" establishing that Mr. Dhanani had received the letter.  (Id.)  However, Defendant did not respond.

On May 23, 2013, Plaintiff filed a Motion for Default Judgment, requesting that the Court enter a Default Judgment awarding him $22,702.57 in damages plus costs of court in the amount of $327.00.  (Doc. # 8 at 6.)  On June 3, 2013, the Court ordered Defendant to show cause within fifteen days why Plaintiff's Motion should not be granted.  (Doc. # 9.)  Plaintiff served Defendant with a copy of the Order to Show Cause and a copy of Plaintiff's Motion for Default Judgment on June 6, 2013.  (See doc. # 12.)  However, Defendant has failed to respond or appear.

## LEGAL STANDARD

In the Fifth Circuit, there are three steps to obtaining a default judgment: (1) default by the defendant, (2) entry of default by the Clerk's office, and (3) entry of a default judgment by the district court.  N.Y. Life Ins. Co. v. Brown, 84 F.3d 137, 141 (5th Cir. 1996).  A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure.  Id.  The clerk will enter default when default is established by an affidavit or otherwise.  Id.  After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on that default.  Id.

Even if a defendant is technically in default, a plaintiff is not entitled to a default judgment as a matter of right. Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam); accord Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir. 1996). "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989). Generally, the entry of default judgment is committed to the discretion of the district court. Mason v. Lister, 562 F.2d 343, 345 (5th Cir. 1977). Among the factors a district court may consider when deciding whether to grant a default judgment are: (1) whether the default was caused by a good-faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default; (4) whether there are material issues of fact; (5) whether grounds for a default judgment are clearly established; and (6) whether the court would think it was obligated to set aside the default on the defendant's motion. Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998). The court may conduct a hearing or make referrals to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

DISCUSSION

I. Default Judgment

All five of the factors the Fifth Circuit described in Lindsey weigh in favor of granting Plaintiff a default judgment.  First, Defendant has not filed a responsive pleading or otherwise appeared in this case and thus has not contested any of the allegations in the Complaint.  Lindsey, 161 F.3d at 893; Nishimatsu, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact").  Defendant was served with process through its registered agent and President, Amin Dhanani, on January 25, 2013 (doc. # 5); Defendant did not respond.  On April 3, 2013, Plaintiff's counsel sent Defendant a letter advising that a Default had been entered by the Clerk and requesting that Defendant answer the lawsuit within seven days.  (Doc. # 8 Ex. 1.)  Again, Defendant failed to respond.  Finally, this Court ordered Defendant to show cause why default judgment should not be entered (see doc. # 9), and Defendant was served with a copy of that Order on June 6 (see doc. # 12), yet Defendant still failed to respond.  Defendant has given the Court no reason to believe that its failure to respond was caused by a good-faith mistake or excusable neglect.

Second, Defendant's failure to respond to Plaintiff's Complaint has brought the adversary process to a halt, prejudicing Plaintiff's interest in pursuing the rights afforded him by law.  See John Perez Graphics & Design, LLC v. Green

Tree Inv. Grp., Inc., Cv. No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (explaining that the defendant's failure to respond prejudiced the plaintiff's rights).  And third, Defendant has had six months to answer or otherwise respond to Plaintiff's Complaint, mitigating the harshness of a default judgment.  See id. (explaining that the harshness of a default judgment was mitigated because the defendant had had over five months to respond and had failed to do so).

      The fourth and fifth factors also weigh in favor of granting Plaintiff default judgment, because Defendant, by defaulting, has conceded the accuracy of the allegations in the Complaint, and those allegations establish a violation of the FLSA's anti-retaliation provision.  The FLSA makes it unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3).  In order to succeed on a claim of retaliation, a plaintiff must first establish a prima facie case showing: "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008).  The Fifth Circuit adheres to the majority position that an employee's informal complaint to his employer—including an oral

complaint—may constitute protected activity under § 215. See id. at 626 ("We adopt the majority rule, which allows an informal, internal complaint to constitute protected activity under Section 215(a)(3), because it better captures the anti-retaliation goals of that section.").

Plaintiff has alleged that he was fired after he complained to management that Defendant had violated the labor laws by not paying him for many of the hours that he had worked—precisely the kind of activity protected by the FLSA. See, e.g., E.E.O.C. v. Romeo Cmty. Schs., 976 F.2d 985, 990 (6th Cir. 1992) (holding that employee engaged in protected activity when she "complained to the school district of unlawful sex discrimination and had told them she believed they were 'breaking some sort of law' by paying her lower wages than previously paid to male temporary custodians"); E.E.O.C. v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989) (holding that female employees engaged in protected activity when they complained to the co-owner of the company and to a foreman "about the unequal pay" despite not having filed a formal EEOC complaint at the time of discharge). Plaintiff further alleges that Defendant's Operations Manager angrily told Plaintiff, in response to Plaintiff's assertion that the company was violating labor laws: "Don't threaten me with that labor law B.S." (Compl. ¶ 7.) This statement, along with the fact that Plaintiff was fired just two days later, strongly supports the inference that Plaintiff was fired in retaliation for engaging in

protected activity.  See Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997); Everett v. Central Miss., Inc. Head Start Program, 444 F. App'x 38, 46 (5th Cir. 2011).  Because Defendant has not contested any of Plaintiff's allegations, the Court has no reason to conclude that Defendant had a legitimate reason for terminating Plaintiff's employment.  Accordingly, the grounds for a default judgment are clearly established.

Finally, the sixth Lindsey factor asks whether the court would think it was obligated to set aside the default on the defendant's motion.  161 F.3d at 893.  Based on the facts known to the Court at this time, there is no reason to think that the Court would be obligated to set aside the default if Defendant later challenged it.  Accordingly, all six Lindsey factors weigh in favor of granting default judgment to Plaintiff.

II.   Damages

A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but it does not establish the amount of damages.  United States v. Shipco Gen. Inc., 814 F.2d 1011, 1014 (5th Cir. 1987).  Ordinarily, a court should not award damages without a hearing.  United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979).  However, when the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be

beneficial to the court, a hearing is unnecessary.  James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).  A hearing is not necessary in this case, because the amount of damages and costs can be determined with certainty by reference to the pleadings and supporting documents.

    A. Lost Wages

In his sworn declaration, Plaintiff attests that he worked at Carl's Jr. for 40 hours per week at a rate of $9.25 per hour and that he last worked at Carl's Jr. on November 14, 2012.  (Doc. # 8-3 ("Saldana Decl.") ¶ 1.)  Plaintiff alleges that 16 hours were missing from his last paycheck (Compl. ¶ 8), amounting to $148.00 in lost wages ($9.25/hour * 16 hours = $148.00) for that period.

After he was terminated, Plaintiff attempted to mitigate the amount of damages by seeking alternate employment.  (Id. ¶ 2.)  Plaintiff was out of work for 57 work days (from November 15, 2012, through February 5, 2013), and lost $4,218.00 in wages ($9.25/hour * 8 hours * 57 days = $4,218.00) during that period.  Plaintiff began working at Taco Bell on February 6, 2013, where he earned $7.25 per hour for 35 hours per week.  (Id.)  Then, on February 22, Plaintiff began working for HEB, where he made $10.00 per hour for 35 to 38 hours per week.  (Id.)  From February 6, 2013, through February 21, 2013, Plaintiff was earning just $50.75 per day ($7.25/hour * 7 hours = $50.75) instead of his normal $74.00 per day ($9.25/hour * 8 hours), resulting, over the course of twelve days, in lost wages

of $279.00. In total, by the Court's calculation, Plaintiff lost $4,645.00 in wages as a result of his retaliatory termination.

### B. Liquidated Damages

"An employer who violates the FLSA is liable for the unpaid wages and 'an additional equal amount as liquidated damages.'" Bernard v. IBP, Inc. of Nebraska, 154 F.3d 259, 267 (5th Cir. 1998) (citing 29 U.S.C. § 216). Section 260 of Title 29 qualifies the automatic award of liquidated damages, however:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 16 of this title.

29 U.S.C. § 260.

Defendant has failed to respond or to appear in this case, and the Court has no reason to believe that its violation of the FLSA was in good faith. Accordingly, the Court concludes that Plaintiff is entitled to liquidated damages in an amount equal to his lost wages.

### C. Damages for Emotional Distress

Plaintiff also requests an award of damages for emotional distress and mental anguish, explaining that he "became extremely stressed" after losing his job because he "did not have a means of paying bills and [his] other obligations." (Saldana Decl. ¶ 4.) "This resulted in losing quite a bit of sleep until I was able to

find another job," Plaintiff insists. (Id.) Plaintiff attests that in the two-and-a-half months between his termination and his employment at Taco Bell he rarely got more than three hours of sleep per night, that he constantly woke up and was not able to go back to sleep because he was worried about how he was going to pay the bills, and that he often got headaches from lying awake. (Id.) Plaintiff asserts that he never suffered any of these symptoms before his termination (id.) and requests $10,000.00 in compensatory damages (doc. # 8 at 5).

Neither the Fifth Circuit nor the United States Supreme Court has addressed whether damages for emotional distress or mental anguish are available for retaliation claims under the FLSA. Little v. Tech. Specialty Prods., LLC, --- F. Supp. 2d ---, 2013 WL 1628390, at *15 (E.D. Tex. Apr. 15, 2013) (citing Lee v. U.S. Sec. Assocs., Inc., No. A-07-CA-395-AWA, 2008 WL 958219, at *7 (W.D. Tex. Apr. 8, 2008)). However, the circuits that have addressed the issue have permitted plaintiffs to recover such damages. See, e.g., Moore v. Freeman, 355 F.3d 558, 563–64 (6th Cir. 2004); Broadus v. O.K. Indus., Inc., 238 F.3d 990, 992 (8th Cir. 2001); Lambert v. Ackerly, 180 F.3d 997, 1011 (9th Cir. 1999); Travis v. Gary Cmty. Health Ctr., Inc., 921 F.2d 108, 111–12 (7th Cir. 1990). These courts reason that, while 29 U.S.C. § 216(b) specifically enumerates various forms of relief, it also includes the phrase "without limitation," making that list of recoverable damages illustrative and not exhaustive. As the Sixth Circuit

explained in Moore, "[t]he statutory scheme contemplates compensation in full for any retaliation employees suffer from reporting grievances, and there is no indication that it would not include compensation for demonstrable emotional injuries, as well as economic ones." 355 F.3d at 563. Following this reasoning, the Court concludes that damages for emotional distress and mental anguish are recoverable for a retaliation claim under the FLSA.

Compensatory damages for emotional distress may only be awarded when specific evidence of actual harm is introduced. See Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 808 (5th Cir. 1996) (citing Carey v. Piphus, 435 U.S. 247 (1978)). As the Fifth Circuit explained in Giles, "[h]urt feelings, anger and frustration are part of life . . . and [are] not the types of harm that could support a mental anguish award." 245 F.3d at 488. However, "[d]amages for emotional distress may be appropriate . . . where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." Id. (internal quotations and citation omitted).

The Fifth Circuit has held that the testimony of the plaintiff alone may be enough to satisfy the requirement that actual harm be shown. See Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1046 (5th Cir. 1998); Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996). In Williams v. Trader Publishing Co., for example, the Fifth Circuit upheld the jury's award of $100,000.00 in compensatory

damages based on the plaintiff's testimony that her termination had resulted in "sleep loss, beginning smoking and a severe loss of weight." 218 F.3d 481, 486–87 (5th Cir. 2000). But see Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 940 (5th Cir. 1996) (remitting $40,000 and $150,000 awards to nominal damages where one plaintiff's uncorroborated testimony described feelings of frustration, low self-esteem, anger, and paranoia and the other testified only that her discharge emotionally scarred her and resulted in unemployment). Because "emotional distress is fraught with vagueness and speculation, and is easily susceptible to fictitious and trivial claims," a court "must scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." Id. at 488 (internal quotation marks and alterations omitted).

In this case, Plaintiff has sworn that he suffered many sleepless nights over two-and-a-half months, that he was stressed and anxious over how he would pay his bills, and that he suffered headaches while lying awake at night. (Saldana Decl. ¶ 4; Compl. ¶ 13.) By defaulting, Defendant has admitted the truth of these allegations. Nishimatsu, 515 F.2d at 1206. Under Fifth Circuit precedent, Plaintiff is entitled to compensatory damages based on the sleeplessness, anxiety, stress, and headaches he suffered. See Giles, 245 F.3d at 488. The more difficult question is how large such an award should be.

Among the factors that courts consider when deciding upon damages for emotional distress are whether the distress resulted in physical symptoms, <u>Doe v. Chao</u>, 306 F.3d 170, 180 (4th Cir. 2002), whether the plaintiff's personal relationships suffered, <u>Moore v. Freeman</u>, 355 F.3d 558, 564 (6th Cir. 2004), and the length and severity of the period of distress, <u>Gates v. Guyton</u>, 853 F.2d 926, 1988 WL 81271, at *3 (6th Cir. 1988) (unpublished).  Plaintiff has attested that he suffered physical symptoms (headaches).  However, Plaintiff did not assert that his termination affected his personal relationships or that he was personally insulted or degraded (as might be the case in, for example, a race or gender discrimination case).  Nor did Plaintiff's mental anguish last for very long: Plaintiff explained that he began experiencing sleepless nights and headaches after his termination but that both "went away after [he] went to work at Taco Bell" (Saldana Decl. ¶ 4), which was just two-and-a-half months later.  Thus, while Plaintiff suffered some emotional distress, it was neither unusually severe nor long-lasting.  Accordingly, the Court concludes that an award of $10,000 would be excessive and that an award of $3,000 is sufficient to compensate Plaintiff for the emotional distress and mental anguish he suffered in the two-and-a-half months between his unlawful termination and his employment at Taco Bell.

D.  <u>Attorney's Fees and Costs of Court</u>

Section 216(b) provides for the recovery of reasonable attorney's fees and costs of court.  In this case, Plaintiff's counsel kept track of all hours worked, including meeting and interviewing Plaintiff and two other witnesses; drafting, revising, and finalizing the lawsuit; supervising the filing and service of process; drafting correspondence to Defendant's registered agent after Defendant failed to answer; corresponding with the clerk's office and drafting an entry of default; and drafting the Motion for Default Judgment.  (<u>See</u> doc. # 8-4 ("Galo Decl.") Ex. B.)  Counsel's records indicate that, as of the date of drafting the Motion for Default Judgment, he had expended 10.79 hours on the case.  (Doc. # 8 at 5.)  Plaintiff's counsel attests in his Declaration that his normal rate is $275 per hour, which the Court concludes is reasonable in light of counsel's nearly 20 years of experience and specialization in employment law.  (<u>Id.</u> at 6; Galo Decl. Ex. A.)  Plaintiff's counsel also asserts that he received 4.10 hours of assistance from his paralegal, who has more than 20 years of experience in the area of labor and employment law and is paid at a rate of $120 per hour.  (<u>Id.</u>)  The Court finds that this rate is also reasonable.  Pursuant to the itemized bill attached to the Galo Declaration as Exhibit B, the total cost for the work performed on this case through May 21, 2013, came to $3,404.07.  (<u>Id.</u>; <u>id.</u> Ex. 4.B.)  After that date, Plaintiff's counsel sent a copy of this Court's Order to Show Cause and Plaintiff's Motion for Default

Judgment to Defendant via certified mail. (See doc. # 8.) Judging from similar prior entries on the itemized bill, the Court concludes that such work likely took Plaintiff's counsel's paralegal 0.30 hours, entitling Plaintiff to an additional $36 in attorney's fees. (See Galo Decl. Ex. B (entries dated January 14, 2013; January 29, 2013; April 3, 2013).)

Plaintiff's counsel also expended a total of $327.00 for the filing fee and service of process fees. (Galo Decl. Ex. B.) Accordingly, Plaintiff is entitled to a total of $3,767.07 in attorney's fees and costs.

E.  Interest

As a general rule, "[p]rejudgment interest should apply to all past injuries, including past emotional injuries." Thomas v. Tex. Dep't of Crim. Justice, 297 F.3d 361, 372 (5th Cir. 2002). "Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." Id. However, the Fifth Circuit has drawn a distinction between claims brought under 29 U.S.C. § 216, concerning actions to recover unpaid compensation and liquidated damages, and FLSA claims brought under § 217, concerning injunctions. See Knowlton v. Greenwood Indep. Sch. Dist., 957 F.2d 1172, 1183 (5th Cir. 1992) (citing Cox v. Brookshire Grocery Co., 919 F.2d 354, 357 (5th Cir.1990)). While prejudgment interest is available for claims brought under § 217, it is not available for claims—such as this one—brought under § 216.

Knowlton, 957 F.2d at 1183; see also id. (noting that the reason for this distinction is "not readily apparent"); Peters v. City of Shreveport, 818 F.2d 1148, 1169 (5th Cir. 1987) (noting that "no [other] circuit seems to have adopted our distinction between cases brought under section 216 and 217").  While the Court agrees that the reason for this distinction is "not readily apparent," Knowlton, 957 F.2d at 1183, the Court is nevertheless bound by circuit precedent and will not award pre-judgment interest in this case.  See Bell v. Able Sec. & Investigations, Inc., Cv. No. 3:10-CV-1954-L, 2011 WL 2550846, at *3 (N.D. Tex. June 28, 2011).

       However, an award of post-judgment interest is mandatory under 28 U.S.C. § 1961 and is awarded as a matter of course.  See Meaux Surface Protection, Inc., v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010); Reeves v. Int'l Tel. & Tel. Corp., 705 F.2d 750, 751 (5th Cir. 1983).  Such interest shall be calculated from the date of the entry of judgment at a rate equal to the weekly average one-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of judgment—in this case, 0.16%.  28 U.S.C. § 1961(a).

## CONCLUSION

       For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment as to Defendant Zubha Foods, LLC, in the amount of:

(1) $4,645.00 in lost wages;

(2) $4,645.00 in liquidated damages;

(3) $3,000.00 in compensatory damages for emotional distress and mental anguish;

(4) $3,767.07 in attorney's fees and costs; and

(5) post-judgment interest at the rate of .16% per annum from this date until the Judgment is fully paid.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, June 28, 2013.

_____
David Alan Ezra
Senior United States District Judge